IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Keith Brian Judy, | ) | Civil Action No. 2:18-cv-1843-RMG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Mako Marine International, Inc., and Tracker Marine, LLC d/b/a Tracker Marine Group, | ) | |
| Defendants. | ) | |

Before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 34). For the reasons set forth below, the motion is granted.

I. **Background**

This action arises out of a 2006 Mako Marine 234 ("the Boat") that capsized in July 2015.[1] Plaintiff Keith Brian Judy purchased the Boat approximately ten days before the accident on July 2, 2015 from Robert Youmans, a prior owner of the Boat. (Dkt. No. 34-3 at 16.) A few days after purchasing the Boat, Plaintiff took the Boat out on Lake Santee, where the Boat's battery running a radio for music died. (*Id.* at 18.) Plaintiff stated he recharged the Boat's batteries after the battery died, though did not take other corrective action. (*Id.* at 19 – 21.)

On the date of the incident, a few days later, Plaintiff and two passengers launched the Boat in Mt. Pleasant, South Carolina. (Dkt. Nos. 34-3 at 20 – 21, 29, 32; 34-5 at 3.) It was the first time Plaintiff had taken the Boat into the ocean. (Dkt. No. 34-3 at 20.) The batteries died when

---

[1] Record testimony includes both July 12, 2015 and July 15, 2015 as the date of the incident, and the Parties disagree as to the date in their briefing. (Dkt. Nos. 34-1 at 2; 34-2 at 24, 46, 55; 34-3 at 7; 34-5; 35 at 2.) Regardless, the precise date of the accident does not affect the disposition of this motion.

Plaintiff and his passengers were approximately 20 – 25 miles offshore. (*Id.* at 60 – 61.) After the batteries died, the bilge-pump did not work without power and Plaintiff does not recall seeing the bilge pumps working. (*Id.* at 27, 44.) Further, the Boat's VHF radio was unable to reach anyone and Plaintiff had no emergency radio or other emergency communication device. (*Id.* at 31, 45, 48.) The boat ultimately took on water and capsized, at which point Plaintiff and his passengers floated in the ocean for 22 hours before being rescued by the Coast Guard. (*Id.* at 57; 34-5.)

Defendants now move for summary judgment, arguing that Plaintiff has failed to create any dispute of material fact that Defendants caused the Boat to capsize. (Dkt. No. 34-1.) Plaintiff opposes summary judgment, and Defendants filed a reply. (Dkt. Nos. 35, 36.) Additionally, Defendants moved to strike an affidavit by Neil Haynes, Plaintiff's expert, filed with Plaintiff's response to summary judgment, arguing the affidavit contradicts Haynes' report and testimony. (Dkt. No. 37.) Plaintiff opposes the motion, and Defendants filed a reply. (Dkt. Nos. 38, 39.)

## II. Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III. Discussion

Plaintiff brings three products liability claims against Defendants: negligence, strict liability and breach of warranty. (Dkt. No. 5.) Plaintiff alleges, generally, that his injuries were proximately caused by Defendants' defective manufacture, design and warnings contained on the Boat. (*Id.*) Plaintiff asserts his claims under admiralty law. (*Id.* at ¶ 5.) As the alleged tort occurred in navigable waters, Plaintiff's tort claims for negligence and strict liability fall under admiralty law. *See Mahony v. Lowcountry Boatworks, LLC*, 465 F. Supp. 2d 547, 550 (D.S.C. 2006) ("The traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters. If it did, admiralty jurisdiction followed; if it did not, admiralty jurisdiction did not exist.") *quoting Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 – 32, 115 S.Ct. 1043 (1995); *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 700 (D. Md. 2008) (applying admiralty law to negligence and strict liability actions). However, breach of warranty claims are tried under the Court's diversity jurisdiction and therefore state law applies. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872, 106 S. Ct. 2295, 2303 (1986) ("Since contracts relating to the construction of or supply of materials to

a ship are not within the admiralty jurisdiction...neither are warranty claims grounded in such contracts.... State law would govern the actions.") (citations omitted). It is undisputed that the Boat was purchased in South Carolina. (*See* Dkt. Nos. 34-3 at 16, 19, 52; 34-4 at 3.) Therefore, South Carolina law applies to the breach of warranty claim.

Regardless, under any of these claims a plaintiff must be able to present evidence that there was some defect and that the alleged defect was the cause of the damages. *See Dandridge v. Crane Co.*, No. 2:12-CV-00484-DCN, 2016 WL 319938, at *2 (D.S.C. Jan. 27, 2016) (citing standards for negligence and strict liability, "[u]nder maritime law, a manufacturer is liable for 'harm caused by a product sold in a defective condition unreasonably dangerous.' ... "Under any theory of product liability, plaintiff must establish causation with respect to each defendant manufacturer."); *Evergreen Int'l, S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008) ("The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law, free of 'inappropriate common law concepts.'") (citations omitted); *First State Sav. & Loan v. Phelps*, 299 S.C. 441, 448, 385 S.E.2d 821, 825 (1989) (holding for breach of express warranty, plaintiff must show: "[1] the existence of the warranty, [2] its breach by the failure of the goods to conform to the warranted description, and [3] damages proximately cause by the breach."); *Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 482 (D.S.C. 2014) ("To recover for breach of the implied warranty of merchantability, a plaintiff must prove (1) a merchant sold goods; (2) the goods were not 'merchantable' at the time of sale; (3) the plaintiff or his property were injured by such goods; (4) the defect or other condition amounting to a breach of

the implied warranty of merchantability proximately caused the injury; and (5) the plaintiff so injured gave timely notice to the seller.").[2]

Here, however, Plaintiff has failed to present any non-speculative testimony or record evidence indicating that there was a defect or that the alleged defect proximately caused Plaintiff's injuries here. The sole evidence presented by Plaintiff regarding the existence of a defect and its proximate cause of the injuries here comes from Neil Haynes, Plaintiff's expert. (Dkt. Nos. 34-2; 35-2.) Haynes' opinion focuses on the alleged lack of a watertight seal on the fish boxes in the Boat, which allegedly permitted water to accumulate in the bilge. (Dkt. No. 35-2 at 6.)

However, Haynes was unable to testify or opine to more than a "possibility" that any defect actually existed with the Boat. (*See* Dkt. No. 34-2 at 31 – 31, "Q: So, in your opinion, it's a possibility that those gaps occurred because of the application procedure…A: It's a possibility"; "Q: Is it fair to say that, at least in terms of engineering probability or certainty, that you don't know when those gaps happened or why? A: I do not."). In one telling exchange, Haynes acknowledged that he had no evidence that there was any issue with the fish boxes' watertight seal on the Boat sold by Defendants:

> Q: And you have no evidence that when this boat was new and sold, that there was anything wrong with that watertight seal, true?
>
> A: Unless there was survey evidence that said that the seal was -- was good and sound, I could not say.

---

[2]Plaintiff's Complaint references implied warranties for both fitness for a particular purpose and merchantability. (Dkt. No. 5 at ¶ 16.) South Carolina recognizes both implied warranties. *Brooks*, 41 F. Supp. 3d at 482. However, where "the particular purpose for which a product is purchased is also the ordinary or intended purpose of the product, the warranties of merchantability and of fitness for a particular purpose merge and are cumulative, such that a plaintiff may proceed upon either theory." *Id.* (citations omitted). The implied warranty claims here are duplicative, as the particular purpose for which the Boat was purchased and its intended purpose, namely use as a boat in navigable waters, are identical.

> Q: Well, you don't have any evidence that it wasn't sound at the time the boat was new, true?
>
> A: I do not know that.

(Dkt. No. 34-2 at 32.) Indeed, Haynes could not rule out the similar possibility that any alleged issue with watertight seals did not arise until after the boat capsized. (*Id.*)[3] Haynes' report is similarly unhelpful in identifying whether a defect caused the injuries here, instead merely opining that the fish boxes were not water tight at the time of the incident without providing any opinion that a design, manufacturing or warning defect most probably caused the fish boxes to not be water tight.[4] (Dkt. No. 35-2.)

It is axiomatic that to create a dispute of material fact, the testimony of a defect and causation must be at least a "probability" rather than a "mere possibility." *See Hoban v. Grumman Corp.*, 907 F.2d 1138 (4th Cir. 1990) ("While it is true that circumstantial evidence may be sufficient to permit a jury to reasonably infer negligence or warranty liability, 'such circumstantial evidence must be sufficient to establish that the result alleged is a probability rather than a mere possibility.'") (citations omitted). "As a result, negligence or warranty claims 'cannot be based solely on conjecture and speculation as to the abstract possibility that an alleged defect caused [damages].... A jury is not permitted to speculate or guess as to the proximate cause of an

---

[3] Plaintiff's identify two sections of depositions that allegedly show cause, yet each similarly does not rise to more than a "possibility." In the first, while Haynes testifies that an improper putty-application procedure could have led to a non-watertight seal, he acknowledges that he has cannot testify to more than a possibility as to whether that caused the alleged leak here. (Dkt. No. 34-2 at 31, 35.) Plaintiff also identified the testimony of Defendant's 30(b)(6) witness that a fish box would be defective if not sealed properly, however this testimony is unhelpful as there is no evidence in this case that the fish boxes were actually not sealed properly. (Dkt. No. 35-4 at 8.)

[4] Haynes also opines that the fish boxes were "never sealed from the manufacturer," yet explains in his deposition testimony that the putty used in the fish boxes was "appropriate" and he could not testify to whether the seal on the Boat here was bad, again failing to provide evidence of causation. (Dkt. Nos. 35-2 at 6; 34-2 at 66 – 67.)

accident.'" *Id.* (citations omitted). *See also Sakaria v. Trans World Airlines*, 8 F.3d 164, 172–73 (4th Cir. 1993) ("In a long line of decisions in this circuit, we have emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder.") (collecting cases); *Fitzgerald v. Manning*, 679 F.2d 341, 348 (4th Cir. 1982) ("A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.").

It is clear from a review of Haynes' report and testimony that he cannot testify as to any defect existing to more than a "possibility," or that any of the multiple possible defects most probably caused the Boat to capsize here. The multitude of "possibilities" identified by Haynes simply fail to create a dispute of material fact regarding whether any defect existed or, if a defect existed, how it caused the injuries here. *See Hoban v. Grumman Corp.*, 907 F.2d 1138 (4th Cir. 1990) (granting defendants summary judgment where "[w]hile [plaintiff] provides some, albeit contradicted, evidence of a fire in the plane's right engine, which we must accept as true, [plaintiff] offers no evidence that the fire was caused by a manufacturing defect other than the testimony of [an expert]. However, [the expert's] testimony fails to show how the leak resulted from a manufacturing defect, how this leak caused a fire in the engine, and how the fire in the engine led to the crash.").

Therefore, as Plaintiff has failed to create any dispute of material fact regarding a defect, or breach, existing, or that any alleged defect proximately caused the injuries here, Defendants are entitled to summary judgment on all claims.[5]

---

[5] Haynes' report has two other conclusory statements. First, Haynes states that there should have been a warning to reinsert the "fix box drain plugs" as the fish boxes were never sealed. (Dkt. No. 35-2 at 6.) However, as above, Haynes has not testified to more than a mere possibility that the

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to **ALL CLAIMS** (Dkt. No. 34).

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

October 17, 2019
Charleston, South Carolina

---

fish boxes were not sealed properly, and further has provided no evidence how this failure to warn caused the injuries here for the same reasons as above. Second, Haynes states that the boarding door should have been "gasketed" with a "compression lever." (*Id.*) Yet, Haynes acknowledges that there is no industry standard that would have required a gasketed door with a compression lever, either at the time of the Boat's building or at the time of his deposition, and to the contrary the Boat's door met industry standards by being weathertight with a latch. (Dkt. No. 34-2 at 57 – 58.) *See Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 544, 462 S.E.2d 321, 329 (Ct. App. 1995) ("While conformity with industry practice is not conclusive of the product's safety, the cases where a member of industry will be held liable for 'failing to do what no one in his position has ever done before' will be infrequent."). Regardless, even if the failure to gasket and include a compression lever on the door constituted breach or a defect, which Plaintiff has failed to demonstrate both in light of the industry standards and by failing to present any argument regarding the risk-utility or consumer expectations tests for assessing a defect, Plaintiff has also failed to demonstrate cause as Haynes' opinion regarding the door similarly relies on the possibility that the watertight seal on the fish boxes was defective. (Dkt. No. 34-2 at 66; 35-2 at 6.)